1 | **FRANK A. WEISER**, State Bar No. 89780
Attorney at Law
2 | 3460 Wilshire Blvd., Suite 1212
Los Angeles, California 90010
3 | Telephone:  (213) 384-6964
Facsimile:   (213) 383-7368
4 | E-Mail:       maimons@aol.com

6 | Attorney for Plaintiffs
GHANSHYAM POKAL
7 | and GEETA POKAL

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GHANSHYAM POKAL; GEETA POKAL, | **Case No.:** |
| Plaintiffs, | **COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF** |
| v | **[VIOLATION OF 18 U.S.C. SECTION 1964 – RICO]** |
| HARDIK A. PATEL; ASHWIN KUMAR PATEL; MEENABEN A. PATEL; TARKIK A. PATEL; ALBERTA LIMITED; J&G URETHANES; AND DOES 1-10 INCLUSIVE, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

1

Plaintiffs GHANSHYAM POKAL and GEETA POKAL (collectively "Plaintiffs," or individually "GHP," or "GP") hereby file the following Complaint and state and allege as follows:

## JURISDICTION AND VENUE

1. Jurisdiction of the federal court exists under 28 U.S.C. Section 1331 and 28 U.S.C. Section 1964, and under 28 U.S.C. Section 1332. This action which arises under the laws of the United States, and involves violations of federal law actionable under 18 U.S.C. Section 1964(c). An independent groundfor this court's jurisdiction also exists under diversity jurisdiction as the plaintiffs and defendants are citizens of diverse states and the amount of controversy exceeds $75,000.00.

## PARTIES

2. Plaintiffs are residents of Costa Mesa, California.

3. Plaintiffs allege that the Defendant HARDIK A. PATEL, aka HARDIK ASHWINKUMAR PATEL aka HARDIK PATEL, aka HARDIK H. PATEL ("HP") is and was at all times herein mentioned a resident of Alberta, Canada.

4. Plaintiffs allege that the Defendant ASHWIN KUMAR PATEL ("AP") is and was at all times herein mentioned a resident of Plano, Texas.

5. Plaintiffs allege that the Defendant MEENABEN A. PATEL ("MP") is and was at all times herein mentioned a resident of Plano, Texas.

6. Plaintiffs allege that the Defendant TARKIK A. PATEL ("TP")

is and was at all times herein mentioned a resident of Plano, Texas.

7. Plaintiffs allege that the Defendant ALBERTA LIMITED ("AL") is and was at all times herein mentioned a limited liability company duly formed under the laws of Alberta, Canada.

8. Plaintiffs allege that the Defendant J&G URETHANES ("JG") is and was at all times herein mentioned a limited liability company duly formed under the laws of Alberta, Canada.

9. The true names and capacities, whether individual, corporate, associate or otherwise, herein named as Does 1 through 100, and persons heretofore unknown involved in the actions taken against the plaintiffs are unknown to them at this time. Plaintiffs are informed and believe and based thereon allege that each of the DOE defendants are responsible in some manner for the events herein referred to, and that plaintiffs' injuries and damages as herein alleged were proximately caused by those defendants. Plaintiffs sue said defendants by such fictitious names on the grounds that the true names and capacities of said defendants are unknown to them at this time. Plaintiffs will amend this complaint when the true names and capacities of said Doe defendants are ascertained. Each reference in this complaint to "defendant," defendants," or a specifically named defendant also refers to defendants sued under their fictitious names.

**FACTS COMMON TO ALL CLAIMS**

10. Plaintiffs are husband and wife who are close to retiring.

11. Defendant HP is their younger relative and is believed to be 27 years of age.

12. Defendants AP and MP, who are also related to Plaintiffs, are the parents of HP and TP who are brothers.

13. Formerly, Plaintiffs resided in Montana and owned and operated a motel in such state.

14. On or about February 18, 2022, HP called Plaintiffs inquiring if the United States border was open in Montana in order to plan a trip to meet with his parents.

15. HP informed Plaintiffs that his parents were planning on crossing the border in order to visit him.

16. At the time that HP called Plaintiffs, the Plaintiffs had already sold their motel in Montana and were residing in Costa Mesa, California and they informed HP of the same and told him that they did not know if the border was open in Montana.

17. During the same call that Plaintiffs had with HP, HP asked Plaintiffs if they could invest with him so that it would assist him in emigrating to the United States.

18. Plaintiffs agreed with HP at that time to invest with HP. This was done after the Defendants AP, MP, and TP encouraged Plaintiffs to do so, informing Plaintiffs that the investment with HP would be safe and secure and a good investment.

19. Approximately, a month after Plaintiffs had the conversation with HP, As referenced in paragraphs 14-18 above, HP texted and called Plaintiffs about a

4

Business investment in Canada, Defendant JG, a foam insulation company.

20. At such time, HP informed Plaintiffs that JG was earning $2,000,000.00 Canadian Dollars ("CAD") revenue gross income and approximately $500,000.00 CAD net income.

21. HP sent a text message with the revenue statement stated in paragraph 17 above.

22. HP informed that he had already given 1.1 million dollars CAD to a Broker in Alberta, Canada, to purchase JG and that he needed an additional $650,000.00 in United States Dollars ("USD") to complete the purchase.

23. At such time, HP told Plaintiffs that the escrow period to purchase JG was a very short period of time and that he needed the money immediately in order to close the escrow.

24. HP informed Plaintiffs that because of the urgency to close the escrow in such a short time period, he would complete the paperwork documenting their investment with him after escrow closed.

25. HP then drafted a contract and formed AL in order to close escrow on the purchase of JG and instructed Plaintiffs to wire the $650,000.00 USD to his new business account created for AL in Alberta, Canada.

26. Upon the request of HP, Plaintiffs then had their bank wire the $650,000.00 USD to AL's business account in Alberta, Canada.

27. At such time, HP informed Plaintiffs that he was the majority owner

of AL with a 51% interest and that Plaintiffs were a minority owner with a 49% interest in AL.

28. Plaintiffs then requested the profit and loss statement ("P&L") from HP of JG and HP sent to it to them.

29. Upon review of the P&L, by Plaintiffs, and the P&L was significantly lower in gross revenue and net revenue than what HP had represented to them as stated in paragraph 16 above.

30. The P&L also revealed that its lease would expire in a year which would significantly decrease JG's earnings. This fact was never told to Plaintiffs by HP prior to their learning of it from reviewing the P&L.

31. Had HP informed Plaintiffs of the facts stated in paragraphs 25 and 26 above, they would not have sent HP the $650,000.00 USD.

28. Upon learning of the facts stated in paragraphs 25 and 26 above, Plaintiffs immediately called HP and demanded a return of their $650,000.00 USD.

29. During the call, Plaintiffs told HP to not transfer their $650,000.00 USD from the AL business account.

30. Subsequently, HP and his broker called Plaintiffs, informing Plaintiffs that the deposit in escrow to purchase JG was non-refundable.

31. Plaintiffs, HP and the broker agreed that they would pay the seller of JG thirty percent (30%) of the purchase price in order to cancel the escrow.

32. The broker also independently informed Plaintiffs that HP was "passionate" about closing escrow in order to purchase JG and that HP's brother, TP, who lives in Texas with HP's parents, AP and MP, was also in discussions with him about closing the escrow.

33. After Plaintiffs discussion with the broker, Plaintiffs immediately called HP to once again confirm that that they wanted him to cancel the escrow and return their funds.

34. HP informed them at such time that he would call them back later to go over the details.

35. Subsequently, Plaintiffs called HP again, and HP agreed that he would release Plaintiffs from the purchase of JG and that he would find another investor.

36. HP then later called Plaintiffs and told them that he cancelled the escrow to purchase JG and that the escrow deposit was returned to him.

37. At such time, HP agreed to wire the funds back to Plaintiffs and then sent Plaintiffs an e-mail thread between him and his banker instructing the banker to send the funds back to Plaintiffs.

38. However, HP never returned, and to this day refuses to return Plaintiffs' funds.

39. Plaintiffs called HP demanding the return of their funds and HP told Plaintiffs that he had no monies to return to them.

40. HP then sent Plaintiffs an expense report that claimed how he had used Plaintiffs' funds.

41. The expense report had line items for known and unknown losses which HP could not explain to Plaintiffs.

42. Despite, Plaintiffs repeated demands to return their funds, HP not only never returned, and to this day refuses to return Plaintiffs' funds, but he has further demanded that Plaintiffs pay him an additional $400,000.00 CAD to cover what he claims are the remainder of his losses.

43. On information and belief, Plaintiffs allege that HP closed escrow and purchased JG which he is currently operating.

44. Further, on information and belief, Plaintiffs allege that HP has other companies that have been enjoined by the City of Alberta.

45. Plaintiffs allege that the AP, MP, and TP, were aware of the events taking place as alleged in paragraphs 14-44 above, and agreed and further advised HP not to return the funds even after Plaintiffs requested that he do so, and were aware at the time that they advised Plaintiffs to invest with HP that HP intended to use whatever funds were invested by Plaintiffs for his own use and not as an investment shared with Plaintiffs.

45. At all times material herein, the communications between, HP, AP, MP, and TP and Plaintiffs included use of the instrumentalities of the United States mail and wire transfers of funds from Plaintiffs' bank in the United States to

Canada.

46. Based, on the foregoing, Plaintiffs allege the following causes of action.

## FIRST CLAIM OF RELIEF

**(Violation of 18 U.S.C. Section 1964(c) Against All Defendants)**

47. Plaintiffs allege and incorporate herein by reference each and every allegation contained in paragraphs 1-46.

48. The actions of the Defendants HP, AP, MP, TP, AL, and JG, and all of the defendants, and each of them, constitutes a federal crime under 18 U.S.C. Sections 1341 and 1343, U.S. mail and wire fraud, actionable under 28 U.S.C. Section 1964©.

49. The actions of the Defendants HP, AP, MP, TP, AL, and JG, and all of the defendants, and each of them, is an enterprise whose activities also affected interstate commerce, as monies were transferred across state lines.

50. Said Defendants HP, AP, MP, TP, AL, and JG, and all of the defendants, and each of them, agreed to and did conduct and participate in the conduct of the enterprise's affairs through a patter of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiffs with the use of the instrumentalities of the U.S. mail and wire fraud, in violation of 18 U.S.C. Sections 1341 and 1343, constituting a pattern of racketeering activity pursuant to 18 U.S.C. Sections 1961(1) and (5).

51. Said Defendants HP, AP, MP, TP, AL, and JG, and all of the defendants, and each of them, have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering activity above.

52. As a proximate result of the foregoing actions of the Defendants HP, AP, MP, TP, AL, and JG, and all of the defendants, and each of them, racketeering activities, and violations of 18 U.S.C. 1961)(1), (5), and 18 U.S.C. 1964©, Plaintiffs have been injured in their business and property investment of their $650,000.00 in USD, and a reasonable return and interest on said amount. Plaintiffs are also entitled their reasonable attorney's fees and treble damages.

## SECOND CLAIM OF RELIEF

**(Fraud by All Plaintiffs Against All Defendants)**

53. Plaintiffs allege and incorporate herein by reference each and every allegation contained in paragraphs 1-52.

54. As a proximate result of the foregoing actions of the Defendants HP, AP, MP, TP, AL, and JG, and all of the defendants, and each of them, Plaintiffs have suffered, and continue to suffer extreme hardship damages, which include but are not limited to economic and non-economic damages. The amount of damages is not less than $5,000,000.00 USD against each defendant for the fraud committed by Defendants HP, AP, MP, TP, AL, and JG, and all of the defendants, and each of them, against

Plaintiffs. Plaintiffs are also entitled to appropriate declaratory and injunctive relief against the defendants, and each of them, requiring an immediate return to Plaintiffs of their $650,000.00 in USD by Defendants HP, AP, MP, TP, AL, and JG, and all of the defendants, and each of them Plaintiffs are also entitled to exemplary damages Defendants HP, AP, MP, TP, AL, and JG, and all of the defendants, and each of them. Plaintiffs are also entitled their reasonable attorney's fees.

### THIRD CLAIM OF RELIEF

**(Conversion by All Plaintiffs Against All Defendants)**

55.   Plaintiffs allege and incorporate herein by reference each and every allegation contained in paragraphs 1-54.

56.   As a proximate result of the foregoing actions of the Defendants HP, HP, AP, MP, TP, AL, and JG, and all of the defendants, and each of them, Plaintiffs have suffered, and continue to suffer extreme hardship and damages, which include but are not limited to economic and non-economic damages. The amount of damages is not less than $5,000,000.00 USD against each defendant for the illegal use and conversion of Plaintiffs' funds by Defendants HP, HP, AP, MP, TP, AL, and JG, and all of the defendants, and each of them, against Plaintiffs.  Plaintiffs are also entitled to appropriate declaratory and injunctive relief against the defendants, and each of them, requiring an immediate return to Plaintiffs of their $650,000.00 in USD by Defendants HP, HP, AP, MP, TP, AL, and JG, and all of the defendants, and each of them Plaintiffs are also entitled to exemplary damages Defendants HP, HP, AP, MP, TP, AL,

and JG, and all of the defendants, and each of them. Plaintiffs are also entitled their reasonable attorney's fees.

## FOURTH CLAIM OF RELIEF

**(Breach of Contract by All Plaintiffs Against All Defendants)**

57.  Plaintiffs allege and incorporate herein by reference each and every allegation contained in paragraphs 1-56.

58.  As a proximate result of the foregoing actions of the Defendant HP, and all of the defendants, and each of them, Plaintiffs have suffered, and continue to suffer extreme hardship and damages. The amount of damages is not less than $650,000.00 USD against Defendant HP, and all of the defendants, and each of them, for the breach of their agreement to return such funds to Plaintiffs.  Plaintiffs are also entitled to appropriate declaratory and injunctive relief against the defendants, and each of them, requiring an immediate return to Plaintiffs of their $650,000.00 in USD by Defendant HP, and all of the defendants, and each of them Plaintiffs are also entitled to exemplary damages Defendant HP, and all of the defendants, and each of them. Plaintiffs are also entitled their reasonable attorney's fees.

WHEREFORE, Plaintiffs pray judgment against the Defendants, and each of them, as follows:

## FIRST CLAIM FOR RELIEF

1.  For damages of not less than $650,000.00;

2.  For declaratory and injunctive relief including, but not limited to,

requiring an immediate return to Plaintiffs of their $650,000.00;

3. For treble damages;

4. For attorney's fees;

**SECOND CLAIM FOR RELIEF**

5. For damages of not less than $5,000,000.00;

6. For declaratory and injunctive relief including, but not limited to, requiring an immediate return to Plaintiffs of their $650,000.00;

7. For exemplary damages;

8. For attorney's fees;

**THIRD CLAIM FOR RELIEF**

9. For damages of not less than $5,000,000.00;

10. For declaratory and injunctive relief including, but not limited to, requiring an immediate return to Plaintiffs of their $650,000.00;

11. For exemplary damages;

12. For attorney's fees;

**FOURTH CLAIM FOR RELIEF**

13. For damages of not less than $650,000.00;

14. For declaratory and injunctive relief including, but not limited to, requiring an immediate return to Plaintiffs of their $650,000.00;

15. For exemplary damages;

16. For attorney's fees;

**FOR ALL CLAIMS FOR RELIEF**

17. For costs of suit;

18. For such other and further relief as the Court deems proper.

Dated: December 19, 2022         LAW OFFICES OF FRANK A. WEISER

                                 By: /s/ Frank A. Weiser
                                 _____
                                 FRANK A. WEISER, Attorney for
                                 for Plaintiffs GHANSHYAM POKAL
                                 and GEETA POKAL

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial pursuant to F.R.C.P. 38.

Dated: December 19, 2022         LAW OFFICES OF FRANK A. WEISER

                                 By: /s/ Frank A. Weiser
                                 _____
                                 FRANK A. WEISER, Attorney for
                                 for Plaintiffs GHANSHYAM POKAL
                                 and GEETA POKAL