Joshua M. Wolff (Bar No. 134426)
WOLFF MASCARO LLP
9160 Irvine Center Dr., Suite 200
Irvine, California 92618-4683
T: (949) 769-3600 | F: (949) 769-3601
jwolff@wolffmascaro.com

Attorneys for Defendants Ashwin Kumar
Patel, Meenaben A. Patel, and
Defendant/Cross-Complainant Hardik A.
Patel

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

GHANSHYAM POKAL; GEETA POKAL,

        Plaintiffs,

    v.

HARDIK A. PATEL; ASHWIN KUMAR PATEL; MEENABEN A. PATEL; TARKIK A. PATEl; ALBERTA LIMITED; J&G URETHANES; and DOES 1-10, inclusive

        Defendants.

_____

HARDIK A. PATEL,

        Cross-Complainant,

    v.

GHANSHYAM POKAL; GEETA POKAL,

        Cross-Defendants.

Case No. 8:22-cv-02276-DOC-ADS

_____

**CROSS-COMPLAINT OF HARDIK PATEL**

Cross-Complainant Hardik A. Patel alleges:

1. Hardik Patel is a resident of Alberta, Canada.

2. Cross-Defendants Ghanshyam Pokal and Geeta Pokal, husband and wife, allege in their Complaint that they are residents of Costa Mesa, California.

3. The Pokals filed their Complaint in this action after their state action against Pokal was dismissed for failure to prosecute.

4. The dispute between Hardik and the Pokals concerns their attempt to purchase a Canadian business together. As alleged below, the Pokals caused Hardik to lose a $1,100,000 CAD nonrefundable deposit because they backed out of the transaction just days after assuring Partel "we are all in," "we will not back out," and "don't you worry."

**Background**

5. The Pokals are experienced entrepreneurs, having purchased and sold motels and other businesses. In early 2022, after selling a motel they owned and operated in Whitefish, Montana, the Pokals were looking for new investment opportunities. Ghanshyam Pokal approached Hardik, a younger cousin, about buying a motel together in Montana. Hardik in turn told Ghanshyam about a Canadian company that was for sale, J&G Urethanes/Superior Spray Systems Ltd. ("J&G").[1] Ghanshyam agreed to buy the company with Hardik as partners.

6. Ghanshyam and Hardik formed a new entity, 2415792 Alberta Ltd. ("Alberta Ltd."), through which they would purchase J&G's assets. On March 10, 2022, Ghanshyam provided Hardik with the name and tax identification number of the entity that would hold Ghanshyam and Geeta's interest in Alberta Ltd., NG & MG Investments LLC, a Montana limited liability company ("NG & MG"). [Ex. A][2]

---

[1] https://jgurethanes.com/

[2] Exhibit references are hyperlinked. Click alt+back arrow (or command+back arrow) to return to original page.

7.     On March 14, 2022, Hardik reported to the government of Alberta, Canada, that Alberta Ltd.'s shareholders were NG & MG at 49% and Hardik's separate company, Real Enterprises 333 Corp., at 51% [Ex. B] and secured a loan for Alberta Ltd. to fund the $1,100,000 nonrefundable deposit to purchase J&G's assets. [Ex. C] Ghanshyam asked Hardik for wiring instructions to fund NG & MG's initial capital contribution:

> Hey Hardik please provide the legal entity
> Of the new company drawn by your attorney
> Including the addresses & Bank information
> So the money can be transferred to that account only, so
> may not cause any problems or inconvenience to anyone
> in future please
> So we all are on the same page.
>
> Thank you,
>
> Regards,
>
> Geeta & Ghanshyam Pokal

[Ex. D (grammar errors in original)]

8.     The following day, Hardik made a formal offer on behalf of Alberta Ltd. to purchase the assets of J&G. Hardik had been negotiating with J&G's broker, Performance Business Brokers,[3] and through those negotiations, Hardik understood the offer would need to be "all cash," without contingencies, closing quickly, and with a substantial nonrefundable deposit. Accordingly, Alberta Ltd. offered to pay $1,750,000 CAD, of which $1,100,000 CAD would be a nonrefundable deposit, closing by March 31, 2022. J&G accepted the offer that day. [Ex. E]

9.     On or about March 18, 2022, Ghanshyam wired $650,000 USD ($809,235 CAD) [Ex. F], to Alberta Ltd., representing a portion of Ghanshyam's share of the G&J purchase price. Ghanshyam proposed that Hardik collect the shortfall from J&G's profits. Hardik agreed.

---

[3] https://performancebusinessbrokers.ca/

10.    On March 19, 2022—12 days before closing—, Hardik made clear to Ghanshyam that their investments would be nonrefundable, and Ghanshyam acknowledged that he understood:

> Hardik: "Hi Ghanshyam Mama
> I am writing this to inform you that this investment is strictly non refundable and I want you to also talk to your son because once we guve [sic] the money it's non refundable deposits"
> Ghanshyam: "**Don't worry Hardik we are all in and we will not back out dont [sic] you worry**"

[Ex. G (emphasis added)]

11.    The parties then discussed telling Hardik's parents about the transaction:

> Hardik: "Do you want me to inform my mom dad about this project so they can be in mediation so we both are protected"
>
> Ghanshyam: "No no don't worry why bother them when we can maturely handle this"
> Ghanshyam: "I don't want [to] tell anyone until it's done"
>
> Hardik: "Alright whatever you say I trust you"

(*Id.*)

12.    Based on Ghanshyam's assurance that he was committed to the partnership and would not back out, Hardik released the $1,100,000 CAD nonrefundable deposit.

13.    About a week later, on March 25, 2022, Ghanshyam told Hardik he wanted to back out. Hardik promptly texted the broker, requesting he cancel the transaction.

> Hardik: "Hey can we cancel the deal and if you can help me refund my money"
>
> Broker: "It's impossible"
>
> Hardik: "Please try"
>
> Broker: "Why what's going on this is not a joke **you'll loose [sic] 1.1m**"

Hardik: "Please help me resolve it with seller as my cousin wants to back out"

Broker: "That's your family matter not my problem sorry you were aware that [ ] this] was **non refundable deal** so the seller dropped the price"

Hardik: "I know but my cousin from montana wants to back out"

Broker: "You can inform him the situation sorry goodbye"

[Ex. H (emphasis added)]

14.     In a text exchange with Hardik on March 29, 2022, Ghanshyam acknowledged his mistakes and the financial impact on Hardik but, nonetheless, threatened to sue Hardik and his family if Ghanshyam didn't get his money back.

Ghanshyam: "I thought about **my mistakes** but if You can forget the money and send me my full money that would be appreciated and you are young so you can make this money back but we are retiring so we need the money. Please wire us the funds"

Hardik: "Mama how's that fair I should bear your mistakes?

Hardik: "I told you it was non refundable deposit"

Ghanshyam: "Ya I know but **we changed our mind** after taking to our kids sorry"

Ghanshyam: "And you are young and rich, you will make this money back soon"

Hardik: "Please understand it's not about that mama but why should I bear it when you backed out"

Ghanshyam: "Please 🙏 I need the money"

Ghanshyam: "Otherwise you will incur legal expenses and **I have very good lawyers and I will also involve your whole family including your parents brother and everyone**"

Hardik: "Mama are you threatening

Ghanshyam: "Think whatever you want to think"

[Ex. I (emphases added)]

Wolff Mascaro LLP
9160 Irvine Center Dr.
Suite 200
Irvine, CA 92618

-5-

Cross-Complaint

15.     A month and a half later, on May 11, 2022, Ghanshyam sued Hardik, Real Enterprises 333 Corp., and Alberta Ltd. in California state court. After the California state court dismissed the complaint for failure to properly and timely serve it on all defendants, Ghanshyam and his wife Geeta filed the present action in federal court, this time adding Hardik's parents and brother as defendants. The complaint against Hardik's brother was dismissed for lack of service, and the Court denied Hardik and his parents' motion to dismiss for lack of personal jurisdiction on March 18, 2024.

**First Cause of Action**

**BREACH OF FIDUCIARY DUTY**

**Against Cross-Defendant Ghanshyam Pokal**

16.     Hardik incorporates by reference the preceding allegations.

17.     The Pokals and Hardik formed a legal partnership when they agreed to associate for the purpose of acquiring G&J's assets and operating its business for profit. They thus owed each other and the Partnership fiduciary duties of loyalty and due care.

18.     Ghanshyam breached his duties of loyalty and due care by recklessly agreeing that the Partnership would make a substantial nonrefundable deposit toward the purchase of J&G's assets—assuring Hardik, "Don't worry, Hardik, we are all in and we will not back out don't [sic] you worry"—and then, less than a week later and after Hardik had advanced the nonrefundable deposit and bound himself to repay a $1,100,000 CAD loan for it, backing out and insisting that Hardik bear the full financial impact of the Pokals' action because "you are young and so you can make this money back ...."

19.     Ghanshyam acknowledged the wrongfulness of his conduct ("I thought about my mistakes"); he admitted breaching the partnership agreement ("we changed our mind"); and he apologized for his conduct ("sorry"). But Ghanshyam refuses to take responsibility for his actions. Instead, he wants Hardik to bear the

entire loss—not because Hardik did anything wrong, but because "you are young so you can make this money back."

20.     As a result of the Ghanshyam's fiduciary breach, Hardik is liable for the loan used to finance the $1,100,000 CAD nonrefundable deposit (less the Pokals' nonrefundable contribution of $809,235 CAD), plus interest on that loan at 13.9% per annum from March 14, 2022, as well as other consequential and incidental damages, in an amount to be proved at trial.

**Second Cause of Action**

**BREACH OF PARTNERSHIP AGREEMENT**

**Against All Cross-Defendants**

21.     Hardik incorporates by reference the preceding allegations.

22.     The partnership between the Pokals and Hardik required contributions from each toward the $1,750,000 CAD price to acquire G&J's assets. The Pokals, with an interest of 49%, were to contribute $857,500 USD. Hardik, with a 51% interest was to contribute $892,500.

23.     The Pokals breached the partnership agreement by contributing only $809,235 CAD and then inducing Hardik to finance and make a $1,100,000 nonrefundable deposit toward the purchase of J&G's assets—assuring Hardik, "Don't worry, Hardik, we are all in and we will not back out don't [sic] you worry"—and then, less than a week later and after Hardik had advanced the nonrefundable deposit and bound himself to repay the $1,100,000 CAD loan for it, backing out, demanding Hardik return their investment, and insisting that he bear the full financial impact of their action because "you are young and so you can make this money back ...."

24.     The Pokals also breached their duty to act consistently with the obligation of good faith and fair dealing by threatening Hardik when Hardik refused to return the money the Pokals had contributed to the Partnership for the purpose of the purchase they then reneged on: "[Y]ou will incur legal expenses and I have very

good lawyers and I will also involve your whole family including your parents brother and everyone[.]"

25.     As a result of the Pokals' breach of the partnership agreement, the partnership forfeited the $1,100,000 CAD nonrefundable deposit, Hardik has been damaged in amount of the $290,765 CAD ($1,100,000 CAD nonrefundable deposit less the Pokals' contribution of $809,235 CAD), plus interest at 13.9% per annum from March 14, 2022, as well as other consequential and incidental damages, in an amount to be proved at trial.

WHEREFORE, Hardik requests judgement as follows:

1.  For compensatory damages against Ghanshyam Pokal for breach of fiduciary duty in an amount according to proof;

2.  For compensatory damages against Ghanshyam Pokal and Geeta Pokal for breach of partnership agreement in an amount according to proof;

3.  For prejudgment interest from at least March 14, 2022; and

4.  For such other relief as the Court deems proper.


Dated: June 14, 2024

WOLFF MASCARO LLP

By: _____
Joshua M. Wolff
Attorneys for Specially Appearing
Defendants Ashwin Kumar Patel and
Meenaben A. Patel

# PROOF OF SERVICE

I am over 18 years of age and not a party to this action. My business address is 9160 Irvine Center Dr., Suite 200, Irvine, California 92618-4683; jwolff@wolffmascaro.com.

On June 14, 2024, I served the foregoing **CROSS-COMPLAINT OF HARDIK PATEL** in the manner below:

Frank A. Weiser                           Attorneys for Plaintiffs
3460 Wilshire Blvd., Suite 1212
Los Angeles, CA 90010                    maimons@aol.com

☐ U.S. MAIL: I deposited the documents with the U.S. Postal Service, postage prepaid, in Irvine, California.

☐ OVERNIGHT CARRIER: I delivered the documents, fare prepaid, to a carrier authorized to receive and transport documents for overnight delivery.

☒ ELECTRONIC TRANSMISSION: I caused the documents to be transmitted by e-file with the Clerk of the Court by using the CM/ECF system, which sends notice of electronic filing to the parties.

☐ PERSONAL DELIVERY: I delivered the documents to a courier authorized to transport documents for personal delivery.

I verify this service under penalty of perjury on June 14, 2024, in Irvine, California.

Joshua M. Wolff